UNITED STATES v. SHOCK, County Treasurer.

(Circuit Court, E. D. Oklahoma. January 10, 1911.)

No. 1,202.

1. TAXATION (§ 181*)—LANDS—EXEMPTION FROM TAXATION—CONSTRUCTION OF STATUTES.

Under Act April 26, 1906, c. 1876, § 19, 34 Stat. 144, relating to allotted lands of the Five Civilized Tribes of Indians, and providing that "all lands upon which restrictions are removed shall be subject to taxation and the other lands shall be exempt from taxation as long as the title remains in the original allottees," and Act May 27, 1908, c. 199, § 4, 35 Stat. 313, which provides that "all lands from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes," the exemption from taxation does not exist

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

any longer, in any case, than the time during which the land is inalienable.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 181.*]

2. INDIANS (§ 15*)—TAXATION (§ 181*)—LANDS—LANDS OF CREEK MINORS.

The provision of section 4 of the original agreement with the Creek Indians approved March 1, 1901 (Act March 1, 1901, c. 676, 31 Stat. 863). that "allotments for any minor * * * shall not be sold during his minority" was not repealed by the supplemental agreement approved June 30, 1902 (Act June 30, 1902, c. 1323, 32 Stat. 500) and until such minor allottees, whether Indians or freedmen, attain their majority, their lands both homestead and surplus are inalienable and nontaxable.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 15;* Taxation, Dec. Dig. § 181.*]

3. TAXATION (§ 181*)—LANDS—INHERITED LANDS.

Act April 26, 1906, c. 1876, § 22, 34 Stat. 145, which provides that the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection had been made or to whom a deed or patent had been issued prior to his death might sell and convey their interest in the lands, and that in case there were both adult and minor heirs the minors might join in such sale by guardian, in case of heirs who are full blood Indians however, the conveyances to be subject to approval by the Secretary of the Interior, had the effect of removing the restrictions on alienation imposed by section 19 of the act on lands allotted to Indians of the full blood on their descent to either adult or minor heirs of less than full blood, and on such descent the lands become alienable and therefore taxable. As to the lands inherited by full bloods, however, the provision requiring the approval of the Secretary to their alienation, construed in connection with other provisions of the act, had the effect of continuing the restriction as to inherited lands until removed by subsequent legislation, and such lands are not subject to taxation.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 181.*]

4. TAXATION (§ 181*)—LANDS—LANDS INHERITED BY FREEDMEN.

Act April 21, 1904, c. 1402, 33 Stat. 204, which removes all restrictions on the alienation of surplus lands allotted to freedmen who are members of either of the Five Civilized Tribes "except minors," does not refer to freedmen allottees who were minors at the time of the passage of the act and continues the restriction as to them after they attain their majority but to minors as a class, and the exception ceases to be effective on their majority. As applied to lands inherited by freedmen, except homesteads, all such lands whether inherited from an Indian or a freedman ancestor, adult or minor, become alienable and taxable if the heir is an adult or when he attains his majority.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 181.*]

In Equity. Suit by the United States against Elmer Shock, County Treasurer of Okmulgee county, Okl. On demurrer to bill, sustained in part, and overruled in part.

William J. Gregg, U. S. Atty.

Joe S. Eaton, Co. Atty., for defendant.

CAMPBELL, District Judge. On November 11, 1909, the government filed its bill against the defendant. county treasurer of Okmulgee county, this state, praying an injunction restraining and enjoining him from offering for sale or selling any of the lands described in a certain schedule attached to the bill as Exhibit A, for the payment of taxes assessed against said lands by the officers of said Okmulgee county, and enjoining him from receiving and collecting any taxes

from any of the allottees of the Creek Nation or tribe of Indians, or duly enrolled freedmen of said nation, levied and assessed against any of the lands described in said Exhibit A, and for a decree canceling, annulling, and setting aside and holding for naught all taxes levied and assessed by the county authorities of the said county of Okmulgee for the year 1908, against the lands described in said exhibit, and for decree canceling said assessments as clouds upon the title.

The lands may be classified as follows:

First. All land allotted to all duly enrolled members of the Creek Nation or Tribe of Indians who are enrolled as full blood Indians, both adult and minors.

Second. All lands allotted to enrolled Creek Indians, whether full bloods or not, who were under the age of 21 years on the 1st day of March, 1908, both surplus and homestead.

Third. All allotted lands belonging to freedmen of the Creek Nation who were under 21 years of age on the 1st day of March, 1908.

Fourth. All lands allotted to any Creek freedman who was under the age of 21 years on the 21st day of April, 1904, where the title to such land still remained in the hand of the original allottee on the 1st day of March, 1908.

Fifth. All allotted lands both homestead and surplus which were originally allotted to any deceased Creek Indian or freedman, whether adult or minor, where the title to such land remained in his heirs on the 1st day of March, 1908.

Sixth. All lands originally allotted to the heirs of deceased Creek Indians or freedmen as the interest of their deceased ancestor in the public lands of the Creek Nation, whether such heirs be adults or minors, where the title to said land remained in said heirs as original allottees of their deceased ancestor on the 1st day of March, 1908.

To the bill the defendant demurs, offering the following grounds:

First. The defendant demurs to the bill of complaint in so far as it seeks to enjoin the collection of taxes for the year 1908 upon the surplus allotments of lands allotted to any Creek citizen who is enrolled as a mixed blood or freedman, and who was a minor on the 1st day of March, 1908, such lands being taxable and alienable, and the complainant not being entitled to any relief thereon.

Second. The defendant demurs to the complainant's bill in so far as it seeks to enjoin the defendant from the assessment and collection of taxes for the year 1909 upon all lands whether homesteads or surplus of those who are enrolled on the Creek tribal rolls as full blood Indians and who died prior to March 1, 1908, such lands being taxable and alienable, and the complainant not being entitled to any relief thereon.

Third. The defendant demurs to the bill of complaint in so far as it seeks to enjoin the defendant from the assessment and collection of taxes for the year 1908 upon the lands belonging to any freedman inherited by him from his deceased ancestor, to which deceased ancestor or his heirs said land had been allotted prior to March 1, 1908, such lands being taxable and alienable and the complainant not being entitled to any relief thereon.

The Constitution of this state (section 270) provides that "such property as may be exempt by reason of treaty stipulations existing between the Indians and the United States government, or by federal laws, during the effect of such treaties or federal laws, shall be exempt from taxation." Congress, by the Act of April 26, 1906, c. 1876, 34 Stat. 137, provided:

"That all lands upon which restrictions are removed shall be subject to taxation and the other lands shall be exempt from taxation as long as the title remains in the original allottee."

The last-mentioned act, as its title indicates, is to provide for the final disposition of the affairs of the Five Civilized Tribes, and the lands referred to in the provision above mentioned are the lands allotted to members of the Five Civilized Tribes, the subject of the tax here involved.

By Act May 27, 1908, c. 199, § 4, 35 Stat. 313, it was further provided:

"That all lands from which restrictions have been or shall be removed, shall be subject to a taxation and all other civil burdens, as though it were the property of other persons than allottees of the Five Civilized Tribes."

[1] From this it is clear that regardless of prior legislation or treaties the intention and policy of Congress, as expressed by the two acts last referred to, was that so long as these allotted lands remain subject to any restrictions upon alienation, they shall not be taxed by the state, but whenever all restrictions upon alienation shall be removed, then such lands shall be subject to taxation, and other civil burdens to which other lands are subjected. Therefore any attempt on the part of the state to tax restricted lands would be in violation not only of the acts of Congress enacted pursuant to its paramount and sole right to legislate regarding these lands, but would also violate the exemption expressed in the state Constitution. In view of the purpose which prompted Congress, in the first instance, to place restrictions upon the alienation of these allotted lands, and in view, also, of the purpose of Congress, as expressed in the act of March 3, 1893, c. 209, 27 Stat. 612, providing for the Dawes Commission, and various subsequent acts, to prepare what was then the Indian Territory for statehood, with a view to the establishment of a state at an early day, which has now been accomplished, it is entirely reasonable that Congress should not have intended the exemption from taxation to exist longer than the time during which the lands were inalienable. Goudy v. Meath, 203 U. S. 146, 27 Sup. Ct. 48, 51 L. Ed. 130. Therefore the complainant in this case can not successfully contend that the lands of any particular class of Creek allottees were exempt from taxation by the state at any particular time, unless it appears that at such time the lands were inalienable by reason of restrictions still existing upon their alienation.

[2] Taking up the first ground of the demurrer, the question is presented whether the surplus allotments of minor Creek Indians less than full blood, and minor Creek freedmen, were relieved from restrictions March 1, 1908. By section 4 of the original Creek agreement

(Act March 1, 1901, c. 676, 31 Stat. 863), it was provided "allotments for any minor may be selected by his father, mother, or guardian, in the order named, and shall not be sold during his minority; all guardians or curators appointed for minors and incompetents, shall be citizens." This provision, in the most clear and unmistakable terms, makes the Creek minors' allotment inalienable during his minority. By the supplemental Creek agreement, approved June 30, 1902, c. 1323, 32 Stat. 500, the orginal agreement was amended and supplemented. The scope of this supplemental agreement is set forth in section 20 therein, which is as follows:

"This agreement is intended to modify and supplement an agreement ratified by said act of Congress approved March 1st, 1901, and shall be held to repeal any provision in that agreement or any prior agreement, treaty, or law in conflict herewith."

I do not find any provision in the supplemental agreement so in conflict with the provision of said section of the original agreement as to warrant the conclusion that its repeal was intended. Until Congress shall express a clear intention to repeal the restriction provision as to minors, it must be considered as in force, and I find no such evidence of an intention to do so expressed in the supplemental agreement. It is suggested by counsel for defendant that by the act to provide for additional United States Judges in the Indian Territory, approved April 28, 1904, c. 1824, 32 Stat. 573, conferring full and complete jurisdiction upon the United States courts in the matter of the guardianship of minors and incompetents, whether Indians, freedmen, or otherwise, and section 20 of the act of Congress to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, approved April 26, 1906, which provided that allotments of minors and incompetents may be rented or leased under the order of the proper probate court, had the effect of repealing section 4 of the original agreement. The case of Morrison v. Burnette, 154 Fed. 617, 83 C. C. A. 391, is cited in support of this contention. I find nothing in the case referred to or the decision of the court to my mind inconsistent with the continuation of the restriction provided by said section 4, and therefore conclude that on March 1, 1908, the allotments of Creek minors, whether Indians or freedmen, were inalienable, and therefore nontaxable.

[3] Were the allotments of those allottees who were enrolled on the Creek tribal rolls as full bloods, and who died prior to March 1, 1908, taxable for that year? By the supplemental Creek agreement above referred to, the surplus allotment of the allottee, whether full blood, mixed blood, or freedman, was made inalienable for the return of five years from the date of the approval of the agreement, or until August 8, 1907. The homestead allotment was to remain "nontaxable, inalienable, and free from any incumbrance whatever, for 21 years from the date of the deed therefor." And a separate deed was to be issued to each allottee for his homestead, in which this condition should appear. By section 19, of the Act of April 26, 1906, supra, it was provided:

"That no full blood Indian of the Choctaw, Chickasaw, Cherokee, Creek or Seminole tribes shall have power to alienate, sell, dispose of, or encumber in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this act, unless such restriction shall, prior to the expiration of said period, be removed by Act of Congress; and for all purposes the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior. * * * Provided further, that all lands upon which restrictions are removed shall be subject to taxation and the other lands shall be exempt from taxation as long as the title remains in the original allottee."

And by section 22 of the same act:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent had been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

It is clear from section 22, above quoted, that the adult heirs, less than full blood, of *any* deceased Indian, whether full blood or mixed blood, who, prior to his death, had made his selection, or to whom patent had been issued, might, after the passage of the act, alienate the lands, or his interest therein inherited from such deceased full blood. This being a removal of the restrictions from such inherited land, so far as the interest of such adult heirs is concerned, that interest in such lands became taxable. It provides that the interest of a minor heir, less than full blood, of any such deceased allottee, in the lands so inherited from him, may be sold by order of the proper court, upon petition of the guardian. This is in effect removing restrictions upon the alienation of the minor's interest in such inherited lands, and providing for its sale (if it be sold), in the manner common to all minors, irrespective of race. It is a provision applied to the minor not because he is an Indian, but because he is a minor, and is in no sense a restriction in the sense in which that term is used relating to Indian lands, it follows that on March 1, 1908, such inherited lands then held by either adult or minor heirs of less than full blood, were alienable without restriction, and were, therefore, taxable.

As to full blood heirs, it is urged by the defendant that the provision requiring the conveyance of their interests in such inherited lands are to be subject to the approval of the Secretary of the Interior, has no reference to section 19, which in terms extends restrictions upon the alienation of the lands *allotted* to full bloods for a period of 25 years; that it merely has reference to the restrictions provided in the supplemental agreement as to surplus and homestead, and provides that as to full bloods these restrictions shall not be effected by the act, but shall remain on the land until they expire by their limitation, as provided in the said supplemental agreement. It will be noted that

the 25-year restriction imposed by section 19 applies in terms to "any of the lands *allotted* to" full bloods. The term "allotment," in the Indian legislation now under consideration, pursuant to which the lands of the Five Civilized Tribes were divided among the individual members thereof, has a special signification, and applies to the integral part of the land of a particular tribe which each individual member of such tribe receives as his share in the division of such land contemplated by Congress in the act of 1893, providing for the Dawes Commission, and carried out pursuant to that and subsequent legislation; but even though there be a distinction between the class of lands treated in section 19 and those treated in section 22, the one being the original allotment and the other the inherited lands, still it does not follow that Congress only intended to provide for the approval of the Secretary of the Interior until the expiration of the term for which restrictions were imposed by the supplemental agreement. Section 29 of the act provides "that all acts or parts of acts inconsistent with the provisions of this act be, and the same are, hereby repealed." The five-year term, for which the restrictions as to surplus lands were originally imposed, would expire in August, 1907, a little more than a year after the passage of this act. Congress is presumed to have legislated with this in mind, and it is not to my mind reasonable that had it only intended this provision to be effective for that short space of time, it would have used the general language without qualification. Had such been the intention, it is my opinion that it would have been made clear by a qualification, that such approval would not be required after the expiration of the restrictions provided in the two agreements referred to. That it did not do so, convinces me that it was intended to extend this restriction upon the sale of these inherited lands in the hands of the full blood heirs beyond the time provided in the agreements. Now, if Congress intended, as defendant contends, that after August 8, 1907, a full blood heir might sell his inherited lands without restriction, then it would be unreasonable to suppose that it would provide in the same act that he cannot dispose of the same character of lands by will without restriction. But in section 23, the very next section, it was provided:

"Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein: Provided, that no will of a full blood Indian devising real estate shall be valid if such last will and testament disinherits the parent, wife, spouse, or children of such full blood Indian unless acknowledged before and approved by a judge of the United States court for the Indian Territory of a United States commissioner."

That this approval of the court was necessary after August 27, 1908, see 35 Stat. 312, c. 199, § 8, wherein it is provided that section 23, above referred to, shall be amended by adding the words "or a judge of a county court of the state of Oklahoma." This clearly shows that Congress considered the provision as to the approval of wills of full bloods to be in effect. It applies to any will of a full blood devising real estate, making no distinction between his personal allotment and lands inherited by him. This is inconsistent with the idea that all re-

strictions upon the sale of his inherited lands expire on August 8, 1907. It was held in United States v. Freeman, 3 How. 556, 11 L. Ed. 724, that if it can be gathered from a subsequent statute in pari materia what meaning the legislators attached to the words of a former statute, this will amount to a legislative definition of its meaning, and will govern the consideration of the first statute. The continuation of this provision regarding wills in the subsequent act referred to amounts to a legislative declaration that it was not the intention of Congress in the act of April 26, 1906, that all restrictions upon the alienation of lands inherited by full bloods should expire on August 8, 1907. It was the intention of Congress that such restrictions should continue beyond that date, and until removed by subsequent legislation. It follows that the interest of all full blood Creek heirs in the inherited lands owned by them on March 1, 1908, was not subject to taxation.

[4] The third ground of the demurrer to the bill relating to the 1908 taxes is addressed to that portion of the bill seeking to enjoin the defendant from the assessment and collection of taxes for the year 1908, upon lands belonging to any Creek freedman, inherited by him from his deceased ancestor, to which deceased ancestor or his heirs said land had been allotted prior to March 1, 1908. In discussing this ground of the demurrer, counsel for complainant in his brief says:

"We only seek to enjoin the tax of such lands as are described in the proposition of counsel for defendant where the title still remains in the heirs."

By act of Congress of April 21, 1904, c. 1402, 33 Stat. 204, it was provided:

"All the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed."

It is contended by counsel for complainant that freedmen who were minors on April 21, 1904, but who have since become of age, are not affected by this act and are not by virtue thereof relieved from restrictions upon alienation of their surplus lands upon attaining majority.

This I think a too narrow construction of the act referred to. For reasons sufficient to Congress, it saw fit to remove restrictions from the surplus lands of all adult allottees of the classes mentioned. The same reasons apply with equal force to those subsequently becoming adults. No reason is suggested, nor is any conceived, for making any distinction between those of the classes named, who were of age April 21, 1904, and those subsequently becoming of age. To make such distinction would I think, be in direct violation of the plain purpose of the act. In keeping with the plan running through all legislation since 1893 pertaining to the Five Civilized Tribes, to shape Indian affairs here so as to prepare Indian Territory for statehood, and to place the Indian upon his own responsibility as early as consistent with his welfare, Congress has from time to time, relieved certain of the allottees from the restrictions previously imposed upon

the alienation of their land or designated portions thereof. The acts by which restrictions have been so removed have applied to the allottees affected, not as individuals, for they were too numerous to so specify, but as classes with respect, usually, to degree of blood. The varying degrees of blood most naturally become the lines of demarcation betwen the different classes, because experience shows that generally speaking the greater percentage of Indian blood a given allottee has, the less capable he is by natural qualification and experience to manage his property. There are of course notable exceptions, but this is the rule. In the act of April 21, 1904, the class Congress has in mind consists of those not of Indian blood. It excepts minors of the class named, from the operation of the law, merely because of their minority, and no sound reason can be urged why, when minors of the class named become of age, they are not within the purview of the law, and the only reason that can be at all urged is that they are not clearly within the letter of the law. But as said in Pickett v. United States, 216 U. S. 461, 30 Sup. Ct. 267 (54 L. Ed. 566), "the reason of the law as indicated by its general terms should prevail over its letter when the plain purpose of the act will be defeated by strict adherence to its verbiage." As to the inherited lands of those freedmen who were minors on March 1, 1908, that portion coming from a deceased Indian ancestor would be alienable and therefore taxable in the hands of a minor freedman heir, as we have already seen, under the provisions of section 22 of the Act of April 26, 1906. That portion coming from a freedman ancestor who had reached his majority before death would also be relieved of restrictions, and taxable, having become alienable in the hands of the ancestor before his death. As to that portion coming from a minor freedman ancestor, the restrictions as to sale during his minority would have ended with his death, as would have any restrictions peculiar to the homestead.

It follows that all land, other than homesteads, whether the original allotment or inherited, of Creek freedmen, who were adults on March 1, 1908, were taxable.

For the foregoing reasons, I find that the first ground of the demurrer must be overruled; the second ground of the demurrer is overruled so far as relates to the interest of full blood heirs in the lands involved, and sustained as to all other interests; the third ground of the demurrer should be sustained. It is so ordered.

