UNITED STATES v. SHOCK, County Treasurer.

(Circuit Court, E. D. Oklahoma. January 10, 1911.)

No. 1,398.

1. TAXATION (§ 181*)—INDIANS (§ 15*)—LANDS—LANDS INHERITED FROM ALLOTTEES.

The provision of Act May 27, 1908, c. 199, § 9, 35 Stat. 314, that "the death of any allottee of the Five Civilized Tribes shall operate to remove all the restrictions upon the alienation of said allottees' land" is qualified by the further provisions: First, that the full blood heirs of such

allottee cannot dispose of their interests in such inherited lands without the approval of the court having jurisdiction of the settlement of the estate of the deceased allottee, and second, if the deceased allottee be of one-half or more Indian blood leaving children surviving him born since March 4, 1906, the homestead remains inalienable during the life or lives of such children, or until April 26, 1931, unless restrictions are sooner removed by the Secretary of the Interior. In view of such provisions, the interests of such full blood heirs and the homesteads of deceased allottees of one-half or more Indian blood leaving children born since March 4, 1906, are not alienable or taxable until such restrictions are removed, but all other interests in such inherited lands are subject to taxation.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 181;* Indians, Dec. Dig. § 15.*]

2. INDIANS (§ 15*)—TAXATION (§ 181*)—LANDS—CONSTRUCTION OF STATUTE.
Act May 27, 1908, c. 199, § 9, 35 Stat. 314, provides that all allotted lands of enrolled full blood Indians of the Five Civilized Tribes, and enrolled mixed bloods of three-quarters or more Indian blood "shall not be subject to alienation * * * prior to April 26, 1931, except that the Secretary of the Interior may remove such restrictions." It further provides that "nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act." Held. that the latter provision did not apply to the supplemental agreement with the Creek Indians approved June 30, 1902, c. 1323, 32 Stat. 500, under which the restrictions on alienation of surplus allotments expired Aug. 8, 1907, but only to restrictions theretofore removed by the Secretary of the Interior, under authority of law, and to restrictions removed by Acts of Congress theretofore passed, not for the purpose of imposing, but of removing restrictions imposed by prior legislation; that under the first provision all allotments, whether of homesteads or surplus lands made to enrolled full bloods and mixed bloods of three-quarters or more Indian blood are not alienable nor taxable until the restrictions thereby imposed have been removed.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 15;* Taxation, Dec. Dig. § 181.*]

3. INDIANS (§ 15*)—RESTRICTIONS ON ALIENATION OF LAND—POWER OF CONGRESS TO REIMPOSE.
It is within the power of Congress to impose restrictions on the alienation of the lands of Indian allottees although restrictions imposed by prior legislation have expired by limitation.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 37-44; Dec. Dig. § 15.*]

In Equity. Suit by the United States against Elmer Shock, County Treasurer of Okmulgee County, Oklahoma. On demurrer to bill. Sustained in part, and overruled in part.

Wm. J. Gregg, U. S. Atty.

Joe S. Eaton, County Atty., for defendant.

CAMPBELL, District Judge. On June 1, 1910, the plaintiff filed its bill seeking relief against the defendant similar to that prayed in case No. 1202 (187 Fed. 862) in which an opinion has this day been filed, and has reference to taxes sought to be collected upon the lands involved for the year 1909. The defendant has demurred upon the following grounds:

"First. The defendant demurs to the complainant's bill so far as it seeks to enjoin the defendant from the assessment and collection of taxes for the

year 1909 upon the lands of those who are enrolled on the Creek tribal rolls as full blood Indians, and who had died prior to March 1, 1909, such lands being taxable and alienable, and the complainant not being entitled to any relief thereon.

"Second. The defendant demurs to the bill of complainant in so far as complainant seeks to enjoin the defendant from the assessment and collection of taxes for the year 1909 on the surplus allotments of those who are enrolled as having three-fourths Indian blood or more, and less than full blood whether adult or minor, and whether said lands are owned by the original allottee or his or her heirs, for the reason that said lands are alienable and taxable, and the complainant is not entitled to any relief thereon."

[1] For the reasons given in the opinion above referred to, the question as to whether, on March 1, 1909, the lands referred to by the demurrer were taxable, depends upon whether they were alienable without restriction. By section 19 of the act of April 26, 1906, c. 1876, 34 Stat. 144, all lands from which restrictions were removed were made subject to taxation. By the same act, section 22, the adult heirs of *any* deceased Indian of *either* of the Five Civilized Tribes, were permitted to sell lands inherited from such decedent. Full blood heirs were permitted to sell with the approval of the Secretary of the Interior. This amounted to a removal of restrictions from land inherited by adult and minor heirs, less than full blood, and such lands thereby became taxable without regard to the degree of blood of the Indian ancestor. Section 4 of the 'Act of May 27, 1908, c. 199, 35 Stat. 313, again provided:

"That all lands from which restrictions have been or shall be removed, shall be subject to taxation and all other civil burdens, as though it were the property of other persons than allottees of the Five Civilized Tribes."

Section 9 of the same act provided, in terms, "that the death of *any* allottee of the Five Civilized Tribes shall operate to remove all the restrictions upon the alienation of said allottee's land"; and to section 9 was this proviso:

"That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die, leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against the alienation are removed therefrom by the Secretary of the Interior in the manner provided under section 1 hereof, for the use and support of such issue during their life, or lives, until April 26, 1931; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will, free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April 26, 1931, the land shall then descend to the heirs according to the laws of descent and distribution of the state of Oklahoma, free from all restrictions: Provided further that the provisions of section 23 of the act of April 26, 1906, as amended by this act, are hereby made applicable to all wills executed under this section."

It will therefore be seen that the provision making the death of the allottee operate to remove all restrictions upon the alienation of his land, is qualified by the further provisions, first, that the full blood heirs of such allottee cannot dispose of their interests in such inherited lands without the approval of the court having jurisdiction of the settlement of the estate of the deceased allottee from whom the inheritance comes; and, second, if the deceased allottee be of one-half or more Indian blood, leaving children surviving him born since March 4, 1906, the homestead remains inalienable during the life or

lives of such children, until April 26, 1931, unless restrictions are sooner removed by the Secretary of the Interior. The requirement that the full blood heirs shall not sell without the approval of the court having jurisdiction of the settlement of the estate of the deceased is merely substituting the court in place of the Secretary of the Interior, for the purpose of such approval, and is to that extent a restriction upon the sale of the land. In the event of children born subsequent to March 4, 1906, to allottees of half or more Indian blood, who survive such allottees, the restrictions upon the sale of the homestead continue after such allottee's death, until 1931, or during the life of such children, unless sooner removed by the Secretary of the Interior. It follows that the interests of all full bloods in inherited lands owned by them on March 1, 1909, were not taxable; that the homesteads of deceased allottees of half or more Indian blood, leaving surviving them a child or children born since March 4, 1906, still living on March 1, 1909, were not taxable, unless prior thereto the Secretary of the Interior had removed restrictions therefrom. All other interests in full blood inherited lands on March 1, 1909, were taxable.

[2] The Act of May 27, 1908, provides:

"All lands, except homesteads, of said allottees enrolled as mixed-blood Indians, having half or more than half and less than three-quarters Indian blood, shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians, having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled fullbloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April 26, 1931, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations, concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians, as he may prescribe."

The lands particularly referred to in the second ground argued in the demurrer are the surplus allotments of those allottees who are enrolled on the Creek tribal roll as having three-fourths Indian blood, or more, and less than full blood. It is contended by the defendant that these lands are taxable, first, because it was not intended by the act of May 27, 1908, to reimpose restrictions upon them; and, second, that if it was so intended, Congress was powerless to do so. On August 8, 1907, the restrictions on this class of Creek lands expired by limitation, and from that time until May 27, 1908, there was no restriction upon their alienation. The surplus allotments of this class of allottees are, however, clearly included within the lands mentioned in that portion of the act above quoted as not being subject to alienation prior to April 26, 1931. In the same section, and immediately following the language above quoted, is this sentence:

"The Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore, and nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act."

[3] It is contended by the defendant that one of the laws referred to as removing restrictions prior to the passage of this act is the Creek supplemental agreement, by the terms of which the restrictions on this class of land expired on August 8, 1907. If this construction be

accepted, then it qualifies the foregoing provisions of the act, so far as the lands of Creek allottees less than full blood and of three-quarter blood or more, are concerned, and such portion, if not all, of the lands of the Choctaw and Chickasaw allottees of the same class and possibly a portion of the Cherokee allottees of that class. While the meaning of this sentence is not as clear as it might well have been made, I am of the opinion that it applies only to restrictions theretofore removed by the Secretary of the Interior, under authority of law, and to restrictions removed by such acts of Congress as had theretofore been passed for the purpose not of imposing but of removing restrictions. Before restrictions can be removed, they must have been imposed by prior legislation, and in my opinion the only laws referred to as removing restrictions are those which Congress has passed positively removing certain restrictions either by special or general legislation. It does not have the effect of excepting Creek allottees, less than full bloods, and of three-quarter blood or more, from the operation of the act. It follows that unless the contention of the defendant be sound, that Congress had no power to pass this act, imposing restrictions, the surplus allotments owned by these allottees, who are enrolled on the Creek tribal roll as having three-quarters Indian blood, or more, and less than full blood, are not taxable for the year 1909. As to the power of Congress to reimpose restrictions after they have once expired by limitation fixed in previous legislation, it is contended by the complainant that the state cannot be heard to raise this question; that it is one which the allottee alone can raise. Without determining whether the state may properly raise the question, in a case of this character, I think the question of the authority of Congress to enact this legislation is settled in the affirmative, so far as this jurisdiction is concerned, by the doctrine announced in United States v. Allen, 179 Fed. 13, 103 C. C. A. 1.

The first ground of the demurrer is therefore overruled as to the interests of all full bloods in lands inherited from deceased full bloods prior to March 1, 1909; and as to the homesteads of deceased full bloods leaving surviving them a child or children born since March 4, 1906, and still living on March 1, 1909, except where restrictions had been removed by the Secretary of the Interior; and as to all other interests in full blood inherited lands the first ground of the demurrer is sustained. The second ground of the demurrer is overruled. So ordered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes