FRED L. MORRIS, *Appellee*, v. JOHN R. GREENLEES, *Appellant*.

No. 18,207.

SYLLABUS BY THE COURT.

CHEROKEE INDIAN LANDS—*Death of Allottee—Deed from Heirs within Five Years from Ratification of Treaty—Void.* A member of the Cherokee tribe of Indians who was duly enrolled in accordance with the provisions of the treaty with the Cherokees approved by act of congress on July 1, 1902, and ratified by the Cherokee Nation on August 7, 1902, died subsequently to September 1, 1902, and before he received the allotment of land to which he was entitled. Afterwards the land was allotted in his name for the benefit of his heirs. *Held,* that the lands descended to the heirs subject to the restrictions in section 14. of the treaty and that the heirs had neither the right nor the power to alienate the lands so inherited by them for a period of five years from the ratification of the treaty.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed October 11, 1913. Affirmed.

*S. D. Bishop,* of Lawrence, for the appellant.

*Bennett R. Wheeler,* and *John F. Switzer,* both of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action Fred L. Morris recovered a judgment against John R. Greenlees for breach of warranty as to the title to certain land in Oklahoma. It appears that Eugene Davis was a quarter-blood Cherokee Indian, and a citizen of that nation. He died in 1904, and at the time of his death he was more than twenty-one years of age. Surviving him were his father, W. H. Davis, his mother, E. L. Davis, three brothers, Andrew, Perry and Kinney Davis, and a sister, Mary Davis, as his only heirs at law. His name was placed upon the rolls on May 2, 1905, as if he was a

citizen on September 1, 1902, and the land herein involved was, with other land, allotted in his name for the benefit of his surviving heirs. On May 23, 1905, the father, mother and brothers undertook to transfer the land in question to Mary Davis by warranty deed. On August 25, 1905, she deeded the land to the appellant, and he, on February 27, 1906, conveyed it by warranty deed to the appellee. The evidence further shows that on May 9, 1906, all of the above-mentioned heirs deeded the land to one Carrey C. Harris. Harris went into possession of the land and held it against the appellee. On a trial of the case the court rendered judgment in favor of the appellee, and appellant's motion for a new trial being overruled, he appeals.

The only question presented here is whether or not the appellant had a good title to the land which he conveyed to the appellee, and that depends on whether there was a restriction upon the alienation of the land at the time that the heirs of Eugene Davis executed the deeds mentioned. The question must be determined by the Cherokee treaty, which was ratified in 1902. It provides that:

"SEC. 11. There shall be allotted by the Commission to the Five Civilized Tribes and to each citizen of the Cherokee tribe, as soon as practicable after the approval by the Secretary of the Interior of his enrollment as herein provided, land equal in value to one hundred and ten acres of the average allottable lands of the Cherokee Nation, to conform as nearly as may be to the areas and boundaries established by the Government survey, which land may be selected by each allottee so as to include his improvements.

"SEC. 13. Each member of said tribe shall, at the time of the selection of his allotment, designate as a homestead out of said allotment land equal in value to forty acres of the average allottable lands of the Cherokee Nation, as nearly as may be, which shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of the certificate of allotment. Separate certificate shall issue for said homestead. During the time said homestead is

held by the allottee the same shall be nontaxable and shall not be liable for any debt contracted by the owner thereof while so held by him.

"SEC. 14.    Lands allotted to citizens shall not in any manner whatever or at any time be encumbered, taken or sold to secure or satisfy any debt or obligation, or be alienated by the allottee or his heirs, before the expiration of five years from the date of the ratification of this act.

"SEC. 15.    All lands allotted to the members of said tribe, except such land as is set aside to each for a homestead as herein provided, shall be alienable in five years after issuance of patent.

"SEC. 20.    If any person whose name appears upon the roll prepared as herein provided shall have died subsequent to the first day of September, nineteen hundred and two, and before receiving his allotment, the lands to which such person would have been entitled if living shall be allotted in his name, and shall, with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas; *provided,* that the allotment thus to be made shall be selected by a duly appointed administrator or executor.    If, however, such administrator or executor be not duly and expeditiously appointed, or fails to act promptly when appointed, or for any other cause such selection be not so made within a reasonable and proper time, the Dawes Commission shall designate the lands thus to be allotted.

"Sec. 31.    No person whose name does not appear upon the roll prepared as herein provided shall be entitled to in any manner participate in the distribution of the common property of the Cherokee tribe, and those whose names appear thereon shall participate in the manner set forth in this Act: *Provided,* That no allotment of land or other tribal property shall be made to any person, or to the heirs of any person, whose name is on said roll and who died prior to the first day of September, nineteen hundred and two.    The right of such person to any interest in the lands or other tribal property shall be deemed to have become extinguished and to have passed to the tribe in general upon his death before said date, and any person or persons who may conceal the death of anyone on said roll as

aforesaid for the purpose of profiting by said conceal-
ment, and who shall knowingly receive any portion of
any land or other tribal property or of the proceeds so
arising from any allotment prohibited by this section,
shall be deemed guilty of a felony, and shall be pro-
ceeded against as may be provided in other cases of
felony, and the penalty for this offense shall be con-
finement at hard labor for a period of not less than one
year nor more than five years, and in addition thereto a
forfeiture to the Cherokee Nation of the lands, other
tribal property, and proceeds so obtained." (Part 1,
32 U. S. Stat. at Large, p. 716, ch. 1375.)

As will be observed, section 14 of the treaty expressly
provides that none of the lands allotted under the act
shall be alienated by the allottees or by their heirs for
a period of five years after the ratification of the act,
and that the forty acres selected as a homestead can not
be alienated for a period of twenty-one years. It is
contended, however, that the restriction in section 14
only applies to living members of the tribe, and that the
land of a Cherokee who was entitled to an allotment, but
who died before receiving it, passes to his heirs free
from any restriction. The language of the act does not
admit of such an interpretation. The express provision
is that the lands to which members become entitled by
reason of their tribal relation can not be alienated
either by those to whom the allotments were made
or by the heirs of such allottees for a period of five
years. It is argued that as the provision in section 20
makes no mention of a restriction on alienation, there
is none as to land allotted in the name of a deceased
member and who died before receiving his allotment.
That provision does not purport to either impose or
withdraw restrictions. The preceding general pro-
visions specifically placed restrictions upon alienation
and made them applicable to all allottees and the heirs
of allottees, and hence there was no occasion to repeat
them in other provisions of the act. That provision
was manifestly enacted to protect heirs of members

who had been enrolled and were entitled to a share of the lands but who died pending the allotment proceedings. It prescribes a procedure for completing the allotment and carrying to the heirs of the deceased member the shares they would have received if the selection had been made and the allotment received before the member died. But for this provision there might have been doubt as to the proper methods under the then existing statutes for carrying to the heirs of the deceased Cherokee the inheritable shares to which they were entitled and of giving them a record title to the inheritance. The rights of the heirs are exactly the same as they would have been if their ancestor had lived until a selection of land was made and had acquired a patent of the land before his death. In *Shulthis v. M'Dougal,* 170 Fed. 529, 95 C. C. A. 615, the circuit court of appeals, in speaking of a like provision in a treaty, said:

"These kinsmen got all their right to additional lands under and through the enrolled member who had died. Whether the ancestor was actually seized of the property or not in his lifetime, was immaterial. It was the intent of the statute that the property should pass by the same right and in the same manner that it would have passed if the person enrolled had survived to receive his allotment. The tribe was not bestowing such land as a bounty, but was simply providing for the right of inheritance." (p. 532.)

The court added that congress itself had so interpreted the statute by the act passed in 1906. (Part 1, 34 U. S. Stat. at Large, p. 137, ch. 1876, § 5.)

Appellant cites *Mullen v. United States,* 224 U. S. 448, 32 Sup. Ct. Rep. 494, 56 L. ed. 834, as a controlling authority, but the treaty under consideration in that case differed materially as to restrictions from the one under consideration here. There the restriction upon alienation was confined to allottees and those entitled to allotments, while in the Cherokee treaty it is expressly extended to the heirs of allottees. The court there declined to imply a restriction as to heirs,

but here the specific inclusion of heirs within the expressed restriction makes it clear that the ruling in that case is inapplicable.

In the cited cases of *Hancock et al. v. Mutual Trust Co. et al.*, 24 Okla. 391, 103 Pac. 566; *Rentie v. McCoy*, (Okla. 1912) 128 Pac. 244; and *Reed v. Welty*, 197 Fed. 419, there are some things said tending to support the view that the restriction applies only to living members or allottees, but the express declaration in the Cherokee treaty that the lands can not be alienated by either the allottees or their heirs is sufficient to meet the contention of appellant and the authorities cited by him and leave no room for doubt of the intention of congress to limit the power and right of the heirs of an Indian who has become entitled to or who has received an allotment to alienate the inherited lands during the five-year period, and makes it clear that the disability to alienate is as absolute as to the heirs as to the allottees themselves. The policy of the government was manifestly to protect the Indians and their heirs by withholding complete control and right of disposition of the allotted lands for a fixed period and until they had gained knowledge and experience that would better enable them to protect themselves. There are the same reasons for restricting alienation of the lands by the heirs of those who died between enrollment and the issuance of a patent as by the heirs of those who died after the allotment proceeding had been completed. It was contemplated that some of the members of the tribe might die after they became entitled to lands but before the lands were selected. The heirs of each class were placed upon the same plane and given equal rights of inheritance. As was said in *Shulthis v. M'Dougal*, 170 Fed. 529, 95 C. C. A. 615, congress intended that "the property should pass by the same right and in the same manner that it would

have passed if the person enrolled had survived to receive his allotment." (p. 532.)

The heirs of Eugene Davis would have inherited no more nor less if Eugene Davis had died after his allotment was selected, and as the conveyances were made by his heirs within the restricted period the deeds must be regarded as absolutely void.

The judgment of the district court will, therefore, be affirmed.