## GREENLEES v. WETTACK.

No. 3356.   Opnion Filed June 2, 1914.

(141 Pac. 282.)

**INDIANS—Allotments—Right of Alienation.**  Section 14 of the Chero-
kee Agreement (Act July 1, 1902, c. 1375, 32 St. at L. 717),
providing restrictions as to sale, alienation, etc., of lands by
allottee or his heirs within five years after issuance of pat-
ent, does not apply to lands allotted under section 20 of said
agreement to heirs of an enrolled citizen who died subsequent
to September 1, 1902, before receiving his allotment, and as
to such lands the said agreement imposed no restrictions upon
the right of alienation.

(Syllabus by the Court.)

*Error from District Court, Nowata County;*
*T. L. Brown, Judge.*

Action by John R. Greenlees against John A. Wettack.
From the judgment sustaining a demurrer to the petition, plain-
tiff brings error.   Reversed, with directions.

*W. A. Chase* and *W. A. Sipe,* for plaintiff in error.

*W. H. Kornegay* and *Glass & Weaver,* for defendant in
error.

LOOFBOURROW, J.   From a judgment of the trial court
sustaining a demurrer to the petition of plaintiff in error, he
appeals, and the sole question involved is whether or not lands
allotted under the provisions of section 20 of the Cherokee
Agreement, 32 St. at L. 716, in the name of a deceased mem-
ber of the Cherokee Tribe of Indians, are alienable by his
heirs prior to the lapse of five years from the date of ratifi-
cation of said act or issuance of patent.   The provisions of
that act relating to allotments and restrictions thereon are as
follows:

"Sec. 11.   There shall be allotted by the Commission to
the Five Civilized Tribes and to each citizen of the Cherokee
Tribe, as soon as practicable after the approval by the Secre-
tary of the Interior of his enrollment as herein provided, land

equal in value to one hundred and ten acres of the average allottable lands of the Cherokee Nation, to conform as nearly as may be to the areas and boundaries established by the government survey, which land may be selected by each allottee so as to include his improvements."

"Sec. 13. Each member of said tribe shall, at the time of the selection of his allotment, designate as a homestead out of said allotment land equal in value to forty acres of the average allottable lands of the Cherokee Nation, as nearly as may be, which shall be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of the certificate of allotment. Separate certificate shall issue for said homestead. During the time said homestead is held by the allottee the same shall be nontaxable and shall not be liable for any debt contracted by the owner thereof while so held by him.

"Sec. 14. Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure as satisfy any debt or obligation, or be alienated by the allottee or his heirs, before the expiration of five years from the date of the ratification of this act.

"Sec. 15. All lands allotted to the members of said tribe, except such land as is set aside to each for a homestead as herein provided, shall be alienable in five years after issuance of patent."

"Sec. 18. It shall be unlawful after ninety days after the ratification of this act by the Cherokees for any member of the Cherokee Tribe to inclose or hold possession of, in any manner, by himself or through another, directly or indirectly, more lands in value than that of one hundred and ten acres of average allottable lands of the Cherokee Nation, either for himself or for his wife, or for each of his minor children, if members of said tribe; and any member of said tribe found in such possession of lands, or having the same in any manner inclosed, after the expiration of ninety days after the date of the ratification of this act shall be deemed guilty of a misdemeanor.

"Sec. 19. Any person convicted of violating any of the provisions of section eighteen of this act shall be punished by a fine of not less than one hundred dollars, shall stand committed until such fine and costs are paid (such commitment not to exceed one day for every two dollars of said fine and costs), and shall forfeit possession of any property in question, and each day on which such offense is committed or continued to exist shall be deemed a separate offense," etc.

"Sec. 20. If any person whose name appears upon the roll prepared as herein provided shall have died subsequent to the first day of September, nineteen hundred and two, and before receiving his allotment, the lands to which such person would have been entitled if living shall be allotted in his name, and shall, with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas: Provided, that the allotment thus to be made shall be selected by a duly appointed administrator or executor. If, however, such administrator or executor be not duly and expeditiously appointed, or fails to act promptly when appointed, or for any other cause such selection be not so made within a reasonable and proper time, the Dawes' Commission shall designate the lands thus to be allotted."

"Sec. 25. The roll of citizens of the Cherokee Nation shall be made as of September first, nineteen hundred and two, and the names of all persons then living and entitled to enrollment on that date shall be placed on said roll by the Commission to the Five Civilized Tribes."

"Sec. 31. No person whose name does not appear upon the roll prepared as herein provided shall be entitled to in any manner participate in the distribution of the common property of the Cherokee Tribe, and those whose names appear thereon shall participate in the manner set forth in this act: Provided, that no allotment of land or other tribal property shall be made to any person, or to the heirs of any person, whose name is on said roll and who died prior to the first day of September, nineteen hundred and two," etc.

In *Mullen v. United States*, 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834, the Choctaw-Chickasaw supplemental agreement is construed. Mr. Justice Hughes, speaking for the court, said:

"This supplemental agreement provided that there should be allotted to each member of the Choctaw and Chickasaw tribes land equal in value to 320 acres of the average allottable land of these tribes, and to each Choctaw and Chickasaw freedman land equal in value to 40 acres. The scheme defined two classes of cases: (1) Allotments made to members of the tribes, and to freedmen, living at the time of allotment; and (2) allotments made in the case of those whose names appeared upon the tribal rolls but who had died after the ratification of the

agreement and before the actual allotment had been made. With respect to allotments to living members, it was provided that the allottee should designate 160 acres of the allotted lands as a homestead, for which separate certificate and patent should issue. And the restrictions upon the right of alienation of the allotted lands are found in paragraphs 12, 13, 15, and 16 of the supplemental agreement."

It is held, with respect to allotments of the first class, that the homestead lands are inalienable during the lifetime of the allottee, not exceeding 21 years from date of certificate of allotment. The surplus lands are inalienable by the allottee or his heirs for a period of five years. But as to allotments which fall within the second class, under section 22, same as section 20, *supra,* of the Cherokee Agreement, there are no restrictions, and it is not necessary for the heirs to designate a part of said land as a homestead, each having been provided with a homestead by reason of membership in the tribe.

In *Hancock et al. v. Mutual Trust Co. et al.,* 24 Okla. 391, 103 Pac. 566, opinion by Justice Dunn, it is held that lands allotted under the provisions of section 22, 32 St. at L. 641, c. 1362, Choctaw and Chickasaw Supplemental Agreement, in the name of a deceased member of the Choctaw Tribe of Indians, are alienable by his heirs after legal selection, prior to the lapse of one, three, and five years, and prior to the issuance of certificate or patent. In the Choctaw-Chickasaw Agreement, sections 15 and 16 thereof provide, respectively:

"Sec. 15. Lands allotted to members and freedmen shall not be affected or incumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold except as herein provided.

"Sec. 16. All lands allotted to the members of said tribes, except such land as is set aside to each for a homestead as herein provided, shall be alienable after issuance of patent as follows: One-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years; in each case from date of patent: Provided, that such lands shall not be alienable by the allottee or his heirs at any time before the expiration of the Choctaw and Chickasaw tribal governments for less than its appraised value."

While section 22 of the same agreement is identical in its provisions with section 20, *supra,* of the Cherokee Agreement.

In *Rentie et al. v. McCoy et al.,* 35 Okla. 77, 128 Pac. 244, opinion by Justice Williams, it is held that lands allotted under the provisions of section 28, 31 St. at L. 869, c. 676 (Creek Agreement), passed to the heirs free from restrictions. Said section 28, as amended June 30, 1902 (32 St. at L. 501, c. 1323), contains practically the same provisions as section 20, *supra,* of the Cherokee Agreement.

Section 1 of the Creek Agreement, 31 St. at L. 863, provides:

"Lands allotted to citizens hereunder shall not in any manner whatsoever, or at any time, be incumbered, taken, or sold to secure or satisfy any debt or obligation contracted or incurred prior to the date of the deed to the allottee therefor and such lands shall not be alienable by the allottee or his heirs at any time before the expiration of five years from the ratification of this agreement, except with the approval of the Secretary of the Interior.   *   *   *"

Counsel for defendant in error contend that the restrictions found in section 14, *supra,* of the Cherokee Agreement apply to allotments made under the provisions of section 20, *supra,* and cite *Morris v. Greenlees,* 90 Kan. 472, 135 Pac. 569, which case involved the same land and deed as in the case at bar; the Supreme Court of Kansas holding that the land descended to the heirs subject to such restrictions.

In view of the fact that in *Mullen v. U. S., supra,* the policy or scheme of allotment is so clearly outlined, and the terms of the treaty with the Choctaws and Chickasaws is so analogous, and the conclusions reached by our own court in *Hancock v. Mutual Trust Co., supra,* and *Rentie et al. v. McCoy et al., supra,* also *Reed v. Welty* (D. C.) 197 Fed. 419, opinion by Judge Campbell, we reach a conclusion opposite that announced in the Kansas case.

In the Choctaw-Chickasaw, the Creek and the Cherokee Treaties, respectively, is found the two classes of allotments; *i. e.*: (1) Allotments made to member of the tribe living at the time of allotment. (2) Allotments made to the heirs of and in the name of deceased enrolled members. The restrictions being

limited to the first class in the Choctaw-Chickasaw Agreement, we see no reason why a different rule should apply in construing the Cherokee Agreement.

In *Morris v. Greenlees, supra,* the court, in discussing *Mullen v. U. S., supra,* states:

"The treaty under consideration in that case differed materially as to restrictions from the one under consideration here. There restriction upon alienation was confined to allottees and those entitled to allotments, while in the Cherokee Treaty it is expressly extended to 'heirs of allottees.' "

—referring to section 14 of the Cherokee Agreement.

There may be room for some difference or distinction in the construction or interpretation to be placed upon the Cherokee and the Choctaw-Chickasaw Agreements, relative to restrictions applying to the first class of allotments, but neither the letter nor the spirit of either agreement warrants an interpretation which would attach such restrictions to the second class of allotments. Eugene Davis was an enrolled citizen, but never an allottee; his heirs were therefore the heirs of an enrolled citizen, but not heirs of an allottee, nor can they be properly termed "allottees"; the land which would have been allotted to Eugene Davis, had he lived, passed to his heirs as provided by chapter 49 of Mansfield's Digest of the Statutes of Arkansas.

The petition of plaintiff states a cause of action. The judgment of the trial court is reversed, with directions to overrule the demurrer.

All the Justices concur.