## TALLEY *v.* BURGESS ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 157. Argued January 25, 1918.—Decided March 4, 1918.

The Cherokee Agreement of July 1, 1902, c. 1375, 32 Stat. 716, imposed no restriction, other than that of minority, upon the alienation by the heir of his interest in land allotted under § 20 in the name of an ancestor who died before receiving an allotment.

The Act of April 26, 1906, c. 1876, 34 Stat. 137, § 22, applied to allotments made before its date under § 20 of the Cherokee Agreement (*Brader v. James, ante,* 88,) and required that a guardian's contract, made on May 11, 1906, to convey the minor's interest in such an allotment, be approved by the United States court for the Indian Territory, as a condition to the validity of the contract.

46 Oklahoma, 550, affirmed.

THE case is stated in the opinion.

*Mr. Haskell B. Talley, pro se,* submitted.

*Mr. Thomas D. Lyons,* with whom *Mr. Benjamin F. Rice* was on the brief, for defendants in error.

MR. JUSTICE DAY delivered the opinion of the court.

This suit was brought by H. B. Talley in the District Court of Tulsa County, Oklahoma, for the specific performance of a certain contract entered into by Nora B. Burgess, mother and guardian of the defendant in error, Daniel S. Burgess, a minor, with the law firm of Talley & Harnage. Harnage refusing to join in this action it was brought by Talley alone. Harnage was made a defendant to the suit. The petition sets forth that the contract was for professional services in consideration of which the attorneys were to receive a one-half interest in the one-third interest of the defendant in error, Daniel S. Burgess, in certain Cherokee allotted land. The contract was made on May 11, 1906, and the allotment in question was embraced in a selection of land made by Nora B. Burgess, as administratrix of the estate of John S. Burgess, the latter, the father of Daniel S. Burgess, having died without having selected or received an allotment.

The petition states that on May 11, 1906, Talley & Harnage entered into contracts with the other heirs of John S. Burgess similiar to those entered into with the defendant in error.

The land in controversy, it is set forth, was originally allotted to defendant's mother, an intermarried Cherokee Indian, but the attorneys procured a cancellation of that allotment and then another allotment of the same in the name of the defendant's father, this allotment being selected by the administratrix in his right. The petition avers that defendant's share had been set apart to him, and that at the time of the beginning of the suit he was in the quiet enjoyment thereof. The Circuit Court appointed a guardian *ad litem* for the defendant in error, Daniel S. Burgess, and a motion was filed, treated in the courts below as a demurrer, and the trial court held that

under the statutes of the United States the guardian could not dispose of the ward's property, as she had undertaken to do, except under order of the proper United States court on petition filed for that purpose; and that the attempted sale by the guardian without court procedure was void. On error the Supreme Court of Oklahoma affirmed the judgment of the Circuit Court of Tulsa County. 46 Oklahoma, 550.

The case as presented in this court involves two questions:

1. Whether the Act of April 26, 1906, 34 Stat. 137, is applicable to the present suit.

2. If applicable, whether conveyances of the kind here involved, of the ward's interest in the allotted lands, could be made by his guardian without an order of court.

The land was allotted under the Cherokee Agreement, 32 Stat. 716, which provides in § 11 for allotment by the Commission to the Five Civilized Tribes to each citizen of the Cherokee Tribe, after approval by the Secretary of the Interior of the enrollment provided, of land equal in value to 110 acres, to be selected by each allottee so as to include his improvements. Section 13 provides for the designation of a homestead out of said allotment equal in value to forty acres of the lands of the Cherokee Nation, to be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of the allotment. Section 14 provides that lands allotted to citizens shall not in any manner be encumbered, taken, or sold to secure or satisfy any debt or obligation, or be alienated by the allottee or his heirs, before the expiration of five years from the date of the ratification of the act. Section 15 provides that all lands allotted to the members of the tribe, except such as are set aside for a homestead, shall be alienable five years after issuance of patent. Section 20 provides:

"If any person whose name appears upon the roll pre-

pared as herein provided shall have died subsequent to the first day of September, nineteen hundred and two, and before receiving his allottment, the lands to which such person would have been entitled if living shall be allotted in his name, and shall, with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas: *Provided,* That the allotment thus to be made shall be selected by a duly appointed administrator or executor. If, however, such administrator or executor be not duly and expeditiously appointed, or fails to act promptly when appointed, or for any other cause such selection be not so made within a reasonable and proper time, the Dawes Commission shall designate the lands thus to be allotted."

It may be regarded as established that the Cherokee Agreement, in view of the sections just considered, imposes no restrictions upon alienation of the interest in the land thus going to the heir, other than that of minority. *Mullen* v. *United States,* 224 U. S. 448; *Skelton* v. *Dill,* 235 U. S. 206; *Adkins* v. *Arnold,* 235 U. S. 417. However, the agreement upon which this suit was brought was made after the passage of the Act of April 26, 1906, a statute with which this court has had occasion to deal in recent decisions. Its scope and purpose were dealt with in *Brader* v. *James,* just decided, *ante,* 88. That act, as its title indicates, is a comprehensive one for the final disposition of the affairs of the Five Civilized Tribes. Section 22 provides:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult

and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in case of the organization of a State or Territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

It is contended that this section applies only to heirs of a deceased Indian whose selection has been made by himself, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which the decedent belonged. But in our view Congress in the passage of § 22 had in contemplation that an Indian duly enrolled and entitled to share in the tribal property and lands might die before receiving the allotment to which he, or she, was entitled. Congress had made provision in § 20 of the Cherokee Agreement that such land might be allotted in the name of the deceased, and should with the proportionate share of the other tribal property descend to the heirs of the one who would have been entitled, if living. It also provided that the selection for a decedent should be made by a duly appointed administrator or executor, or, in default of such selection, the Dawes Commission should designate the land to be allotted. We think minor heirs who thus receive lands are within the meaning and purpose of the statute, as much so as they would have been had the land been selected by the ancestor in his lifetime.

Section 22 being applicable to a conveyance of a minor's lands in the situation here presented, we come to the question whether the guardian could legally make disposition thereof without an order of the court of the United

States for the Indian Territory. It is contended that § 22, as enacted, makes the requirement as to the order of the court applicable only after organization of a State or Territory. Literally read the statute might lend itself to such interpretation. But minor heirs are required to join in the sale of the lands by a guardian duly appointed by the proper United States court for the Indian Territory. The next sentence specifically provides that the order of sale must be made upon petition filed by the guardian in the proper court of the county in which the land is situated. These provisions, read together, and construing the statute in the light of the purpose to be accomplished, we think, require court approval in both instances. It is not denied that the United States court for the Territory would have had jurisdiction of a proceeding by a guardian for an order to sell the ward's interests in the lands. (See *Robinson* v. *Long Gas Co.*, C. C. A., 8th Cir., 221 Fed. Rep. 398, where the applicable statutes are set out and considered.)

We cannot believe that Congress intended after territorial or state organization to require the guardian to procure the approval and order of a court before disposition of the ward's lands, and before the organization of a Territory or State to permit the guardian, who was required to be appointed by the United States court for the Indian Territory, which court had jurisdiction over the sale of the lands of the ward upon application of the guardian, to dispose of the ward's interests in lands without judicial approval. The Supreme Court of Oklahoma did not err in holding that the Act of April 26, 1906, was applicable, and that the interests in the lands of the ward could only be sold with the approval of the United States court for the Indian Territory, and its judgment is, therefore,

*Affirmed.*