Earl CHAPMAN and Milton W. Hardy, Plaintiffs in Error,

v.

Eliza TIGER, et al., Defendants in Error.

No. 38127.

Supreme Court of Oklahoma.

Aug. 2, 1960.

Rehearing Denied Nov. 9, 1960.

Milton W. Hardy, of Hardy & Hardy, Tulsa, Okl., for plaintiffs in error.

W. F. Semple, Tulsa, Okl., for defendants in error.

Billie W. Crain, Field Sol., D. Luster Cook, Trial Atty., Harold M. Shultz, Jr., Trial Atty., Office of the Solicitor, U. S. Department of Interior, Muskogee, Okl., amici curiae.

JACKSON, Justice.

This is an appeal by plaintiff from order of the trial court granting new trial to defendants in a quiet title action tried to the court. Plaintiff's title is based on a deed from the County Commissioners of Tulsa County, Oklahoma, dated May 20, 1935, and filed of record June 8, 1935, and actual possession by plaintiff since that date. The land in question had been acquired by the county in 1927 by resale tax deed covering allegedly delinquent ad valorem taxes for the years 1912–1926, inclusive.

Plaintiff's action was commenced on January 28, 1950.

A cross-petition was filed on March 24, 1950, by certain defendants, as sole surviving full-blood Creek Indian heirs of Eliza Tiger, a full-blood Creek Indian allottee who died before receiving the allotment covering the land in question. The position of these defendants is that the land was restricted and non-taxable, during the years 1912–26, and that, therefore, the aforementioned tax resale deed and the County Commissioner's deed under which

plaintiff claims title are void, and should be cancelled.

The trial court rendered judgment for plaintiff in 1955, and in 1957 granted defendants a new trial, from which order plaintiff appeals. In the order granting new trial appears the following:

"* * * the court announced that its judgment had been rendered upon a question of fact as to the statute of limitations, but since said judgment the court in the interim had reviewed the record upon the point and had concluded the court was in error upon such point as a question of fact, and for such reason desired to hear argument first from counsel for plaintiff and intervenor, and having heard argument of counsel for the parties present and being fully advised in the premises concludes and determines as a question of fact that statute of limitations applicable had not run, * * *."

The questions presented on this appeal are:

1. Was the land in question restricted Indian land and non-taxable during the years 1912–26?

2. Did the trial court err in holding that defendants' cross-petition attacking plaintiff's deed and the tax resale deed was not barred by limitations?

The determination of the first question hinges upon the interpretation of two Congressional enactments, the Act of April 26, 1906, 34 Stat. 137, and the Act of May 27, 1908, 35 Stat. 312.

Section 22, Act of April 26, 1906, 34 Stat. 137, 145, provides:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in the case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe." (Emphasis added.)

Section 9, Act of May 27, 1908, 35 Stat. 312, 315, provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land; *Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: * * *."* (Emphasis added.)

The United States Supreme Court, in considering the Act of May 27, 1908, in Parker v. Richard, 250 U.S. 235, at pages 238–239, 39 S.Ct. 442, at page 443, 63 L. Ed. 954, said:

"By the act of 1908, which imposed the restrictions on alienation and contained the leasing provision, Congress further declared, in section 9, 'that the death of any allottee * * * shall operate to remove all restrictions upon the alienation of (the) allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee.'

"In the absence of the proviso it would be very plain that, on the death of the allottee all restrictions on the

alienation of the land allotted to him were removed. But the proviso is there and cannot be disregarded. It obviously limits and restrains what precedes it. In exact words, it puts full-blood Indian heirs in a distinct and excepted class and forbids any conveyance of any interest of such an heir in such land unless it be approved by the court named. In other words, as to that class of heirs the restrictions are not removed but merely relaxed or qualified to the extent of sanctioning such conveyances as receive the court's approval. Conveyances without its approval fall within the ban of the restrictions. * * *.

"In cases presenting the question whether lands inherited from allottees by full-blood Indian heirs are freed from restrictions by section 9, and thus brought within another provision in the same act declaring that land 'from which restrictions have been or shall be removed' shall be taxable and subject to other civil burdens, the Supreme Court of the state and the federal court of that district have both held that under the proviso such land remains restricted in the hands of the full-blood heirs, and so is not within the taxing provision. Marcy v. Seminole County, supra; United States v. Shock, 10 Cir., 187 F. 870.

"Entertaining a like view of the proviso, we conclude that the land covered by the lease is still restricted land."

We held, in Tiger v. Lozier, 124 Okl. 260, 256 P. 727, that the County Court, in approving such alienation, acts as a Federal instrumentality.

In United States v. Shock, 10 Cir., 187 F. 870, 872, the court said:

" * * * the question as to whether, on March 1, 1909, the lands referred to by the demurrer were taxable, depends upon whether they were alienable without restriction. By section 19 of the Act of April 26, 1906, c. 1876, 34 Stat. 144, all lands from which restrictions were removed were made subject to taxation. By the same act, section 22, the adult heirs of any deceased Indian of either of the Five Civilized Tribes, were permitted to sell lands inherited from such decedent. Full-blood heirs were permitted to sell with the approval of the Secretary of the Interior. This amounted to a removal of restrictions from lands inherited by adult and minor heirs *less than full-blood,* and such lands thereby became taxable without regard to the degree of blood of the Indian ancestor." (Emphasis added.)

In United States v. Bean, 10 Cir., 253 F. 1, the United States brought action to prevent the county treasurer of Seminole County, Oklahoma, from selling or conveying certain allotted lands formerly owned by the Seminole Nation or Tribe of Indians, on account of taxes levied thereon for the fiscal years of 1910, 1911, 1912, 1913, and 1914. At page 3 of the opinion, the court said:

"Were these inalienable lands of the full-blood Indian heirs taxable for the fiscal years 1910, 1911, 1912, 1913, and 1914? Counsel for the treasurer of the county argue that they were because Congress provided in section 19 of the Act of April 26, 1906 (34 Stat. 137) that 'all lands upon which restrictions are removed shall be subject to taxation,' and by the act of May 27, 1908 (35 Stat. 312), that 'all lands from which restrictions have been or shall have been removed shall be subject to taxation and all other civil burdens.' But this contention is overborne by the fact that by these very acts of Congress restrictions upon the alienation of these lands while held by full-blood Indian heirs were imposed, * * *. *The lands of the full-blood Indian heirs were not lands from which restrictions had then been removed. They were lands upon which restrictions were imposed by these very acts,* and it is not probable that the legislators intended to impose taxes

upon lands of Indians which the United States was holding for them, while it withheld from them the power of disposition, for such a course runs counter to its public policy and practice from the foundation of the government." (Emphasis added.)

The court held that lands of full-blood Seminole Indian heirs, inalienable without court approval under Act April 26, 1906, c. 1876, Section 22, and Act May 27, 1908, c. 199, Section 9, were not subject to state taxation.

Plaintiff cites the cases of Mullen v. United States, 224 U.S. 448, 32 S.Ct. 494, 46 L.Ed. 834, Skelton v. Dill, 235 U.S. 206, 35 S.Ct. 60, 59 L.Ed. 198, LaMotte v. United States, 254 U.S. 570, 41 S.Ct. 204, 65 L.Ed. 410, and Stewart v. Keyes, 295 U.S. 403, 55 S.Ct. 807, 79 L.Ed. 1507, 1508, in support of his contention that the land in controversy was unrestricted and taxable.

The cited cases do not appear to be in point. In Skelton v. Dill and Mullen v. United States, the court considered acts of Congress, of June 30, 1902, 32 Stat. 500, and March 1, 1901, 31 Stat. 861, which are not involved in the instant case.

LaMotte v. United States, supra, involved *Osage* Indian land, under provisions of acts of Congress not involved in the present case.

In Stewart v. Keyes, supra, it was held that a conveyance made pursuant to a sale by the guardian of an incompetent full-blood Creek Indian, under the direction and with the approval of the County Court, does not require the *further* approval of the court having jurisdiction of the settlement of the estate of the deceased allottee.

Plaintiff additionally argues that the land in controversy was unrestricted because it was allotted for the benefit of heirs of a deceased enrollee who died before selection of the allotment.

■ This question was determined adversely to plaintiff's contention by the United States Supreme Court in Talley v. Burgess, 246 U.S. 104, 38 S.Ct. 287, 62 L.Ed. 600, wherein it was held that the restric-

tions upon conveyances by the heirs of any deceased Indian of any of the Five Civilized Tribes under Section 22 of the Act of April 26, 1906, apply as well in a case where selection has been made by the duly appointed executor or administrator of an Indian who died before receiving his allotment as to a case where the land was selected by the ancestor in his lifetime.

To the same effect, Harris v. Bell, 10 Cir., 250 F. 209; Brader v. James, 246 U.S. 88, 38 S.Ct. 285, 62 L.Ed. 591; David v. Youngken, 10 Cir., 250 F. 208.

In Marcy v. Board of Com'rs, 45 Okl. 1, 144 P. 611, plaintiff a full-blood Seminole Indian heir, instituted action to annul and cancel certain tax sale certificates, and restrain the collection of taxes assessed in the years 1910 and 1911 against non-homestead lands allotted to a full-blood Seminole Indian, plaintiff's ancestor. Plaintiff contended that the lands were restricted and non-taxable under the Act of May 27, 1908.

■ In reversing judgment for defendants we said, at page 614 of the Pacific Reporter opinion:

"From the language of the act 'that all land from which restrictions have been or shall be removed shall be subject to taxation,' it is clear that the power of the state to tax the lands in question is coincident with and dependent upon the unrestricted right of the owner to sell the same. The power to tax, and right to convey, are granted by the same act, become effective upon the same condition and at one and the same time; the former cannot exist without the latter.

"It follows that restrictions upon the alienation of the lands involved are removed only upon compliance with the terms of the proviso requiring the approval of conveyances of full blood heirs by the county court having jurisdiction of the settlement of the allottee's estate. This is a necessary condition precedent to the power of the state to subject such lands to taxation; and, not having been complied with,

all proceedings for the purpose of enforcing collection of taxes on said lands are void."

Quoting further, from the syllabus:

"1. The words 'restrictions upon the alienation,' as used in the Act of Congress of May 27, 1908, c. 199, 35 Stat. 312, means those restraints or limitations imposed by law upon the power of allottees of the Five Civilized Tribes and their heirs to voluntarily convey allotted lands free from supervision or control of any federal agency.

"2. The language of the proviso to section 9 of said act (Act May 27, 1908, c. 199, 35 Stat. 315), 'that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee' excepts lands inherited by full-blood heirs from the general terms of the statute making the death of an allottee operate to remove all restrictions upon the alienation of said allottee's land.

"3. The power to tax inherited Indian land is coincident with and dependent upon the removal of restrictions upon alienation; and, prior to the approval of conveyances of full-blood Indian heirs under the provisions of said act by the proper court, the power to tax said lands does not exist."

The rule enunciated in Marcy v. Board of Com'rs was cited and followed in Watkins v. Howard, County Treasurer, 64 Okl. 166, 166 P. 706. In paragraph one of the syllabus, we held:

"Following Marcy v. Board of County Commissioners, 45 Okl. 1, 144 P. 611, it is held, where the conveyance or deed of the interest of a full-blood Indian heir of the allottee of land allotted in the Choctaw Nation is invalid, unless approved by the Secretary of the Interior or by the court having jurisdiction of the settlement of the estate of the deceased allottee, such interest in the land is not subject to tax-

ation for any year prior to the execution and approval of the conveyance or deed by the heirs."

In Combs v. Johnson, 92 Okl. 189, 218 P. 1098, the facts were substantially identical to those in the instant case. Therein, the land was a portion of the allotment of one Willie Thomas, who was duly enrolled as a full-blood member of the Creek Tribe of Indians, and who died previous to receiving his allotment. Said land was thereafter selected and patented to his heirs, both full-blood Creek Indians. Plaintiff based his title upon a tax deed from the county treasurer, covering unpaid taxes for the year 1909. Defendant was grantee under a deed from the full-blood heirs dated June 15, 1912, which was approved by the county court having jurisdiction over the estate of the deceased allottee.

In affirming judgment on the pleadings for defendant, we held, in paragraph two of the syllabus:

"The power to tax inherited Indian land is coincident with and dependent upon the removal of restrictions upon alienation, and prior to the approval of conveyances of full-blood Indian heirs under the provisions of the act of May 27, 1908, by the proper court, the power to tax said lands does not exist."

In accordance with the holdings of the above-cited cases, we conclude that the land involved in the instant case was restricted as to alienation by the Act of April 26, 1906, and continued in effect by the Act of May 27, 1908, and, therefore, was not subject to ad valorem taxation by the State of Oklahoma for the years 1912–26.

It follows that the resale tax deed and plaintiff's deed are void. Theiman v. May, Adm'r, 203 Okl. 655, 225 P.2d 356; Squires et al. v. Swanson, 169 Okl. 390, 37 P.2d 276; Smith v. Barry, 200 Okl. 619, 198 P. 2d 400.

We come now to the question, whether the trial court erred in granting a new trial to defendants on the ground that the court had rendered judgment for plaintiff and intervenor based on the erroneous find-

ing that defendants' right to relief against the tax resale deed and plaintiff's deed was barred by limitations.

Title 12 O.S. § 93, subd. (3) as amended in 1949, provides that an action for the recovery of real property sold for taxes may be brought within five years after the date of the recording of the tax deed. Subdivision (6) of said statute provides:

"Numbered paragraphs 1, 2, and 3 shall be fully operative regardless of whether the deed or judgment or the precedent action or proceeding upon which such deed or judgment is based is void or voidable in whole or in part, for any reason, jurisdictional or otherwise; provided *that this paragraph shall not be applied so as to bar causes of action which have heretofore accrued, until the expiration of one (1) year from and after its effective date.*" (Emphasis added.)

The amendment became effective April 18, 1949. Defendants' cross-petition, which would have become barred on April 18, 1950, was filed on March 24, 1950, and therefore, is not governed by the 1949 amendment. In Sarkeys v. Martin, Okl., 286 P.2d 727, 728, we held, in paragraph two of the syllabus:

"Where suit was filed and summons issued on April 18, 1950, action was commenced within one year after April 18, 1949, and was not barred by statute of limitations."

See, also, Bridges v. Stick, D.C., 106 F. Supp. 506.

In Theiman v. May, Adm'r, 203 Okl. 655, 225 P.2d 356, we held that neither 12 O.S. 1941 § 93, subdivision 3 (prior to 1949 amendment), nor 68 O.S.1941 § 455, applies to an action to cancel a *void* resale tax deed.

In Whitney v. Posey, 180 Okl. 373, 69 P.2d 335, we held in paragraph one of the syllabus:

"The title of a person in the actual and peaceable possession of land, claiming the same under a tax deed, void upon its face, will ripen into a good title where continuous, exclusive, adverse, and hostile possession is held thereunder for a period of 15 years."

It is readily apparent, therefore, that no statute of limitations is applicable to defendants' cross-petition, and that defendants were properly granted a new trial unless the record establishes adverse possession of the land by plaintiff for a period of fifteen years or more.

In the petition, plaintiff alleges that:

"plaintiff acquired title thereto by deed from Tulsa County, State of Oklahoma, dated May 20, 1935, recorded in Book 1156, page 101, filed of record June 8, 1935, and plaintiff has been in possession and ownership ever since said date."

The period from May 20, 1935, to March 24, 1950, the date defendants filed their cross-petition, is 14 years, 10 months, and 4 days.

Plaintiff testified that prior to 1935 he rented a squatter's house or homestead house on the land from one Dudley, in 1933. That

"I rented it for a full year or a little bit over a year that I rented it altogether. One spring then I propositioned him to buy the house,—it had a nice garden spot—at the time I didn't know for sure whose land it was on, but he told me he didn't own the land, just the house, so I paid him a price for the house and I lived there then possibly six months, maybe longer than that, I forget exactly how long I lived in the house before I dug up the evidence it was up for tax sale and that was at the time Bridges was one of the Commissioners and he was a neighbor. * * *

"Q. You did learn the property had been sold from Bridges and acquired a Commissioner's deed? A. Yes.

"Q. From 1935 on did you continue to live on the property? A. Yes."

It is apparent from his testimony that plaintiff's possession prior to 1935 was

not of sufficient character or quality to constitute adverse possession. He was not claiming title or ownership of the land. Mere possession of land without adverse claim of exclusive title or interest is insufficient to establish title by adverse possession. Melton v. Goodman, Okl., 317 P. 2d 244; Cook v. Craft, 207 Okl. 125, 248 P.2d 236.

■ Plaintiff argues that the period of more than sixty days prior to the date of his deed, during which there were resolutions, notices, appraisals, etc., was "competent evidence of the control and possession, adverse to the world," and sufficient, when added to plaintiff's possession under the deed, to amount to more than fifteen years adverse possession.

We find no evidence in the record of actual possession or occupancy by the county prior to the date plaintiff went into possession under his deed. In Morton v. Van Orsdol, 203 Okl. 394, 222 P.2d 520, we held that there was no presumption of possession by the county under a void resale tax deed. In Sarkeys v. Scott, Okl., 269 P.2d 779, we held that *constructive* possession by holder of void resale tax deed is insufficient to create a title by prescription, but holder must show recordation of the tax deed and *occupancy* of the premises of an open, notorious, exclusive, continuous and hostile character for the statutory period. Compare Vaughn v. Town of Maysville, Okl., 295 P.2d 283, wherein we held that the title of a municipality which is in *actual* possession of land under color of title of a void tax resale deed ripens into a good title where possession is continuous, exclusive, adverse and hostile for a period of fifteen years.

■ Inasmuch as it clearly appears from the record that the original judgment for plaintiff was contrary to the law and evidence, we hold that the trial court did not err in sustaining defendants' motion for new trial.

The order sustaining defendants' motion for new trial is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, HALLEY, JOHNSON, BLACKBIRD and IRWIN, JJ., concur.

BERRY, J., dissents.

BERRY, Justice (dissenting).

I am of the conviction that the following quoted provision of Sec. 4 of the 1908 Act (35 Stat.L. 312) controls this case:

"Sec. 4. *That all land from which restrictions have been* or shall be *removed shall be subject to taxation* and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes. * * * "

To my way of thinking, the question posed by this appeal is whether restrictions on the tract in controversy had been removed prior to May 27, 1908, the effective date of the cited Act. The fact that restrictions had been removed is free from doubt.

The case of Skelton v. Dill, 235 U.S. 206, 35 S.Ct. 60, 59 L.Ed. 198, is squarely in point on the proposition that the tract in the hands of the heirs of Eliza Tiger was unrestricted. The headnote to said case (35 S.Ct. 60) clearly shows the Supreme Court of the United States holding in said case. The headnote reads as follows:

"The restrictions upon alienation by the heirs of an Indian allottee, made by § 16 of the supplemental Creek agreement of June 30, 1902 (32 Stat. at L. 500, chap. 1323), apply only to allotments made to living citizens in their own right, and not to allotments made on behalf of deceased persons, under the authority of § 28 of the original agreement of March 1, 1901 (31 Stat. at L. 861, chap. 676), or of §§ 7, 8 of the supplemental agreement, in none of which is there any suggestion of a restriction upon alienation."

In the cited case it is pointed out in the body of the opinion that "In Mullen v. United States, 224 U.S. 448, 32 S.Ct. 494,

56 L.Ed. 834, a like question arose under the original and supplemental acts relating to the Choctaw and Chickasaw lands, and we held that the restrictions upon alienation imposed by those acts were applicable to allotments to living members in their own right, but not to allotments on behalf of members then deceased. We do not perceive anything in the acts relating to the Creek lands which calls for a different conclusion."

The first paragraph of the syllabus to Moffett et al. v. Conley et al., 63 Okl. 3, 163 P. 118, reads as follows:

"Lands allotted under section 11, Curtis Act June 28, 1898, c. 517, 30 Stat. 495, 497, in the name of a deceased Creek Indian, and which allotment was confirmed by Original Creek Agreement March 1, 1901, c. 676, § 6, 31 Stat. 861, 863, as well as lands allotted in the name of said deceased Creek citizen, pursuant to section 28 of said latter agreement, and where the patent thereto issued to 'the heirs' of the deceased ancestor, such heirs took the title by inheritance, and not by purchase."

This Court held in Rentie et al. v. McCoy et al., 35 Okl. 77, 128 P. 244, that where a person entitled to a Creek allotment died before the allotment was made and the allotment was therefore made to his heirs, his heirs took as heirs and the land in their hands was not restricted.

In Smith v. Sumpsey & Rosie, 64 Okl. 186, 166 P. 1094, it is pointed out that restrictions upon alienation imposed upon citizens of the Seminole Nation apply to allotments made to living citizens and not to allotments made on behalf of deceased citizens. The syllabus to said case reads as follows:

."The restrictions upon alienation by citizens of the Seminole Nation made by the original Seminole Agreement (Act of July 1, 1898, c. 542, 30 Stat.L. 567), apply only to allotments made to living citizens in their own right, *and not to allotments made on behalf of deceased persons* under the authority of section 2 of the second Seminole Agreement

(Act of June 2, 1900, c. 610, 31 Stat.L. 250)."

Attention is directed to cases cited and discussed in the last above cited case at page 1095 of 166 P. At said page it is stated that "In the case of Skelton v. Dill, 235 U.S. 206, 35 S.Ct. 60, 59 L.Ed. 198, it was held that lands in the *Creek Nation* allotted *after* the death of the allottee, under Sec. 28 of that treaty, *passed to the heirs free* from restrictions; *that the restrictions imposed under the other sections of the treaty did not apply to allotments made after the death of the allottee.* * * *" When it is remembered that this case involves the Creeks, and that the land in controversy was allotted *after the death of the allottee,* the Skelton v. Dill case must be said to represent controlling precedent.

In Greenlees v. Wettack, 43 Okl. 16, 141 P. 282, it was held that land allotted to a Cherokee heir was unrestricted in the hands of the heir. The syllabus of the case reads as follows:

"Section 14 of the Cherokee Agreement (Act July 1, 1902, c. 1375, 32 Stat. 717), providing restrictions as to sale, alienation, etc., of lands by allottee or his heirs within five years after issuance of patent, does not apply to lands allotted under section 20 of said agreement to heirs of an enrolled citizen who died subsequent to September 1, 1902, before receiving his allotment, and as to such lands the said agreement imposed no restrictions upon the right of alienation."

The first paragraph of Chupco et al. v. Chapman et al., 76 Okl. 210, 170 P. 259, reads thus:

"Katie Chupco, a full-blood Creek Indian woman, died after enrollment, on April 26, 1900. After her death an allotment was selected for her and patented to her heirs. Held, such heirs took the title to the land by inheritance, and not by purchase."

In view of the fact that restrictions had been removed on the land in controversy prior to the effective date of the cited 1908

Act, the land, by force of Sec. 4 of said Act, which is quoted in part, supra, was subject to ad valorem tax for 1912–1916.

I believe it advisable to point out that the fact that land is restricted in the hands of the Indian owner does not necessarily render the land exempt from ad valorem tax.

In Wynn v. Fugate, 149 Okl. 210, 299 P. 890, 891, a full-blood Indian inherited an interest in the allotment of a half-blood Cherokee. The allotment so inherited was subject to ad valorem tax in the hands of the half-blood allottee. The full-blood Indian heir contended that under the provisions of Sec. 9 of the 1908 Act the land was restricted in his hands and that it was therefore exempt from ad valorem tax. In rejecting said contention this Court pointed out that "though the land in question be subject to restrictions upon alienation, as here contended but not here decided, and though the full-blood Cherokee Indian heir be subject to restrictions upon the sale of the land, a distinction recognized but not here decided, the land *may be subject to taxation. The distinction between restrictions on land or the alienation thereof and restrictions on taxation is clear, notwithstanding the statement of this court* in Marcy v. Board of County Commissioners et al., 45 Okl. 1, 144 P. 611, that 'the power to tax inherited Indian land is coincident with and dependent upon the removal of restrictions upon alienation,' * * *".

The first paragraph of the syllabus to the Wynn v. Fugate case, supra, reads as follows:

"Under the provisions of section 4 of the Act of Congress of May 27, 1908 (35 Stat. 312), all land from which restrictions have been or shall be removed shall be subject to taxation as though it were the property of other persons than allottees of the Five Civilized Tribes. The exception thereto is land exempt from taxation by the provisions of some treaty between the Indian tribe and the United States government, which treaty exemption is protected by section 6, article 10, of the Constitution of Oklahoma."

An application of the rule announced in Wynn v. Fugate, supra, clearly sustains the proposition that if Indian land was unrestricted prior to effective date of the 1908 Act, it was thereafter subject to ad valorem tax, notwithstanding provisions of an Act of Congress requiring that the County Court approve a conveyance of the land by the Indian owner.

In Oklahoma Tax Commission v. United States, 319 U.S. 598, 63 S.Ct. 1284, 1288, 87 L.Ed. 1612, the Supreme Court of the United States said that " 'Nontaxability and restriction upon alienation are distinct things', Superintendent of Five Civilized Tribes, For Sandy Fox Creek No. 1263 v. Commissioner, supra, 295 U.S. 421, 79 L.Ed. 1517, 55 S.Ct. 822, and when Congress wants to require both alienability and nontaxability it can as it has so often done, say so explicitly." In Sec. 4 of the 1908 Act, Congress said in plain language "that all land from which restrictions have been * * * removed shall be subject to taxation", and so Congress has spoken in so far as this case is concerned.

In arriving at the intent of Congress in enacting the 1908 Act in controversy, it is well to remember that the heirs of Eliza Tiger, as members of the Creek Tribe, received allotments in their own right in connection *with which they enjoyed the same ad valorem tax benefits* as those enjoyed by other Creek allottees who did not inherit from ancestors who were entitled to allotments. It follows that if ad valorem tax benefits are extended to Creek lands inherited prior to allotments being made, the limited number of Creeks who took allotments as heirs are, taxwise, placed in a preferred position to those who did not so take. I am of the opinion that Congress did not intend to grant a tax preference to those taking Creek allotments as heirs.

All italics appearing in this dissent have been supplied.

For reasons given, I respectfully dissent to the opinion promulgated herein.

Supplemental Opinion on Rehearing

PER CURIAM.

Plaintiffs in error urge on rehearing that this court overlooked several of their contentions which are decisive. The appeal herein was from order of the trial court granting a new trial to certain of the defendants. In concluding that the trial court did not err, we deemed it appropriate to decide certain meritorious questions for the guidance of trial court and counsel upon another trial of the cause. The remaining contentions of plaintiffs in error will now be considered.

The first contention is, as follows:

"The granting of a new trial is error, where:

"(a) Defaulting parties have not moved for a new trial, and the granting of a new trial for them is at a different term.

"(b) Where the cross-petitioners who did file motion for new trial had neither a claim nor cause of action".

In support of this proposition, it is argued:

"There were about forty-one defendants named. None appeared. Wilson Tiger, Jr., not named as a defendant, without notice, leave or process, filed cross-petition. Default decree was granted against some thirty-three defaulting defendants. The court vacated these default judgments two years after the decree."

The judgment of the trial court in favor of plaintiffs was entered on October 19, 1955. It recites: "* * * the defendant Wilson Tiger, Jr., appearing in person and by his attorney, W. F. Semple, * * * the defendants Colbert Turkey, Lucy Deer, nee Tiger, Alice Lee, Nellie Starr, Rachel Kelly, Walter Kelly and Betty Kelly, as defendants-cross petitioners appearing by their attorney W. F. Semple. * * *."

On October 20, 1955, Motion for New Trial was filed by W. F. Semple as attorney on behalf of "defendants and cross-petitioners."

The order of the trial court granting a new trial, dated November 1, 1957, recites: "there comes on for hearing the Motion for New Trial of the defendants and cross-petitioners Colbert Turkey, Lucy Deer, nee Tiger, Wilson Tiger, Jr., Alice Lee, Nellie Starr, Alexander Kelly, Rachel Kelly, Walter Kelly and Betty Kelly; * * * and the other defendants appearing not; and orders and adjudges that the Motion for a New Trial of the defendants and cross-petitioners, Colbert Turkey group, should be and the same is hereby sustained, * *."

All of the *above-named* defendants are parties to this appeal. Our decision affirmed the action of the trial court in sustaining their motion for new trial. We are unable to see the pertinency of paragraph (a) of the proposition. Paragraph (b) is, we think, adequately disposed of by our decision herein holding that the property involved was restricted and non-taxable in the absence of approved conveyances by the full-blood heirs, and that the cross-petition of said defendants was timely filed.

Plaintiffs in error contend that the failure of cross-petitioners to tender taxes and penalties bars their action to cancel the resale tax deed. In Cherry v. Crown Hill Cemetery Trust, 200 Okl. 35, 191 P.2d 591, we held that where the pleadings contain a prima facie showing that the land was non-taxable, no tender of taxes is necessary prior to determination of that issue.

Next, plaintiffs in error contend that cross-petitioners are judicially estopped by judgment from litigating the question of taxability, alienability and restrictions on the land as previously adjudged against them in the district court of Tulsa County. The argument advanced in support of this proposition is as follows:

"It has been three times heretofore judicially finally established and adjudged that this allotment to the heirs of Eliza Tiger was 'taxable'; the tax sales and tax resales thereof was valid; the heirs of Eliza Tiger and the Five

Civilized Tribes were judicially excluded as having no interest in such allotment."

The three judgments referred to by plaintiffs in error were rendered in the following causes in the district court of Tulsa County, Oklahoma:

No. 78869, Sears-McCullough Mortgage Company, J. W. Hobgood and Nora E. Hobgood v. Eliza Tiger, Creek Roll No. 7963, et al.

No. 79190, A. G. Carlson et al. v. The Unknown Heirs etc. of Eliza Tiger, deceased, et al.

No. 88472, Fred A. Losey v. The Unknown Heirs, etc. of Eliza Tiger, deceased.

■ The rule of "estoppel by judgment" was well stated in the syllabus in Woodworth v. Town of Hennessey, 32 Okl. 267, 122 P. 224, 226, as follows:

"A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, so far as concerns the parties to that action, and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, upon the same or a different cause of action."

See, also, Wilkey v. Southwestern Greyhound Lines, Okl., 322 P.2d 1058.

We note that the tract which is the subject-matter of this action was not involved in any of the cases referred to, although it was a part of the allotment of Eliza Tiger, deceased, as were the tracts involved in those cases, and that at least some of the defendants and cross-petitioners in the instant case were either parties to or privy to the parties in the cases referred to.

In Cause No. 78869, title was not deraigned prior to 1949. The judgment generally quiets title in plaintiffs as against all defendants but there is no allegation or de-

termination that the lands involved therein were unrestricted or taxable.

The judgments in Nos. 79190 and 88472 included findings that Mahaley Kelly, Nancy Tiger, Wadley Kelly and Wesley Tiger were the sole and only heirs of Eliza Tiger, deceased, *and that they had conveyed all their right, title and interest in and to said property.*

Under the law of our decision, the restrictions on said land would have been removed by approved conveyances by the full-blood heirs, in which event the lands would have been liable for ad valorem taxes, as adjudged.

■ We must presume that the judgments were valid and responsive to the evidence. Mulhall v. Mulhall, 3 Okl. 304, 41 P. 109; Ashinger v. White, 106 Okl. 19, 232 P. 850; Cox v. Warford, 34 Okl. 374, 126 P. 1026; Raymer v. First Nat. Bank of Berwyn, 184 Okl. 392, 87 P.2d 1097. Inhering therein were findings of every fact and every conclusion of law (uncontradicted by the judgment roll) that were necessary to support them. Murphy v. Walkup et al., Okl., 258 P.2d 922, 928 and Woodrow v. Ewing, Okl., 263 P.2d 167, 172, and cases there cited.

The case cited by plaintiffs in error, Barnett v. Newcomer, Okl., 307 P.2d 148, is clearly distinguishable. In that case, the judgment which was pleaded as estoppel found that the land involved *was not then restricted under any act of Congress.*

■ It follows that the judgments relied upon by plaintiffs in error cannot properly be construed as having decided that the lands included in the allotment of Eliza Tiger, deceased, were unrestricted and taxable prior to approved conveyances by her full-blood heirs, and therefore they cannot constitute an estoppel as to that issue. The general findings that said heirs had no right, title or interest in the tracts involved in those actions could not bind the heirs as to the tract involved in the instant case.

Plaintiffs in error next contend that the conveyance by Wesley Tiger in July, 1913

"sufficiently started the statute of limitations against his cotenants." They cite Kanuebbe v. McCuistion, 168 Okl. 165, 33 P.2d 1088, which is clearly distinguishable. In that case, the widow and children of the original allottee conveyed, with court approval, all their right, title, and interest in the land involved therein in 1909, and the grantee and his successors had been in actual open, notorious, adverse and exclusive possession from that date to the date of commencement of the action in 1929.

In the present case we held that the prescriptive period of fifteen years was applicable, but that plaintiffs in error had failed to prove the requisite adverse possession for the prescribed period.

The final contention of plaintiffs in error is that there is no right of action in any of the defendants and cross-petitioners (parties to this appeal) to determine the heirs of Eliza Tiger. In this connection, it is argued that the statutes of this state do not provide a right of action to determine heirs, nor to quiet title, unless the deceased ancestor was in fact at some time or another actually in possession of the property, and that, since Eliza Tiger died before enrollment, she could never have been in possession of the lands included in her allotment. Plaintiffs cite the language of 84 O.S.1951 § 257 as authorizing an action to determine persons entitled to real property, "where any person dies intestate possessed of real property in this State * * *."

Said statute further provides:

"or where the grantees in any deed, or deed of patent made and issued or designated as 'the devisees,' of 'the heirs at law' or 'the legal representatives' of a named deceased person, without naming them, or by any other description or designation which leaves at large the names or individual identity of the particular persons embraced therein, the name and individual identity of (such persons) may be judicially determined * * *."

The land involved in the instant case was allotted by deed of March 26, 1904, to "The Heirs of Eliza Tiger, Creek Indian Roll No. 7963 (deceased)." Under the quoted language of the statute, said defendants had a right to have the identity of the "Heirs" determined.

Furthermore, the answer and cross-petition of the defendants alleged a cause of action in the nature of ejectment for possession of the land in question and to quiet title thereto. It is well settled that one not in possession may bring an action for possession and to quiet title by cancellation of a deed which constitutes a cloud on the title. 12 O.S.1951 § 1141; Sarkeys v. Martin, Okl., 286 P.2d 727; Sooner Pipe & Iron Co. v. Bartholomew, 207 Okl. 191, 248 P.2d 225. In the last cited case, at page 227 of the Pacific Reporter, we said:

"Plaintiffs in error further contend that the defendants in error were not in possession and therefore could not maintain an action for quieting title. The petition delineates the chain of title showing that the land was the allotment of James W. Phillips, an Osage Indian, and was sufficient to maintain an action to quiet title and for possession of the premises under Title 12, § 1141, O.S.1941."

Rehearing is denied.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.